UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 MAY 13 PM 2: 50

CLERK

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| WHITNEY TUMMINGS,<br>　　　Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cv-156 |
| | ) | |
| CHAMPLAIN VALLEY OFFICE OF<br>ECONOMIC OPPORTUNITY,<br>VERMONT DEPARTMENT OF<br>CHILDREN AND FAMILIES, and<br>JOHN DOES 1–5, | ) | |
| | ) | |
| 　　　Defendants. | ) | |

**ORDER**
(Doc. 5)

Plaintiff Whitney Tummings, representing herself, brought this case against Champlain Valley Office of Economic Opportunity ("CVOEO"), the Vermont Department for Children and Families, Economic Services Division ("ESD"), and five individual employees of ESD whose names will be identified through litigation. Ms. Tummings alleges Defendants wrongfully denied her access to federally funded heating fuel assistance, weatherization services, and home-heating repair assistance over a period of approximately five years. (Doc. 4 at 1, 3.) She asserts claims under 42 U.S.C. § 1983, Title VI, the Low Income Home Energy Assistance Program ("LIHEAP"), the Weatherization Assistance Program, the Fourteenth Amendment, and Vermont law, alleging that Defendants' denials were discriminatory, retaliatory, and procedurally improper. (*Id.* at 1, 6–7.)

On the same day she filed the Complaint, Ms. Tummings moved for a temporary restraining order and preliminary injunction requiring Defendants to provide emergency heating assistance, authorize and fund repair or replacement of her water heater, restore her access to

federally funded heating and weatherization programs, and refrain from adverse action relating to a reversed fraud determination. (Doc. 5 at 1, 3.) In response to a court order asking for clarification, Ms. Tummings subsequently filed a supplemental statement seeking *ex parte* relief under Rule 65(b). (Doc. 8.) Ms. Tummings asserts that she currently resides in Colchester, Vermont without hot water and that Defendants continue to rely on allegedly false and fraudulent grounds to support their erroneous denials of assistance. (*Id.* at 1–4.) For the reasons discussed below, Plaintiff's request for a temporary restraining order is DENIED.

### Standard

A temporary restraining order, like a preliminary injunction, is an extraordinary remedy that will not be granted lightly. *See, e.g., Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 33–34 (2d Cir. 1991). A temporary restraining order is generally intended to preserve the status quo until a court can hear and decide a request for a preliminary injunction. *See, e.g., Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989) (citation modified) ("The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.").

The standard for a temporary restraining order in the Second Circuit is the same as for a preliminary injunction. *See, e.g., Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n. Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). "A preliminary injunction may be granted only upon a demonstration of irreparable harm, and either (1) a likelihood of success on the merits of the case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the moving party." *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 779–80 (2d Cir. 1994) (citation modified).

2

When, as here, the party seeking the temporary restraining order asks the court to change the status quo, an even higher legal standard applies. The moving party must make a "clear" or "substantial" showing of a likelihood of success when (1) the order sought "will alter, rather than maintain, the status quo—*i.e.*, is properly characterized as a 'mandatory' rather than 'prohibitory' injunction;" or (2) the order sought "will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir. 1996) (citation modified).

Ms. Tummings asks the court to issue a temporary restraining order without notice to Defendants. (Doc. 8 at 1.) The court may issue an *ex parte* temporary restraining order only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the moving party "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

**Analysis**

**I.     On the current record, Ms. Tummings has not shown that immediate relief is needed before Defendants have an opportunity to respond.**

The Second Circuit has described the issue of irreparable harm as "the single most important prerequisite for the issuance of a preliminary injunction." *JTH Tax, LLC v. Agnant,* 62 F.4th 658, 672 (2d Cir. 2023) (citation modified). To satisfy her burden to show irreparable harm, Ms. Tummings must demonstrate that, without a temporary restraining order, she "will suffer an injury that is neither remote nor speculative, but actual and imminent." *See Grand River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007) (citation modified).

Ms. Tummings's filings describe concerning living conditions. The court does not minimize the significance of allegations that a party's home lacks functioning hot water, has

3

damaged pipes, or lacks adequate heat. Such conditions may, in an appropriate case and on an appropriate record, support emergency relief. The question at this stage, however, is narrow: whether Ms. Tummings has shown that irreparable injury will occur before Defendants can be heard and whether the extraordinary relief requested must issue immediately rather than after expedited adversarial proceedings.

On the present record, Ms. Tummings has not shown that immediate and irreparable injury, loss, or damage will result before Defendants can be heard in opposition. Ms. Tummings contends her home lacks functioning hot water, her water heater failed, her pipes burst, and she lacks adequate heat. (Doc. 5 at 2, 4; Doc. 8 at 2.) Those allegations are grave, but the filings do not identify a specific change in circumstances showing that the court must act before Defendants can respond. Ms. Tummings's filings make clear that these conditions arise from an extended course of events dating back years, including asserted denials of heating assistance and weatherization services beginning in approximately 2021. (Doc. 4 at 1, 3; Doc. 8 at 3.) The filings also do not include documentation, repair estimates, inspection reports, medical evidence, or other materials establishing that a brief period for notice and response would cause a distinct, imminent injury that could not be addressed through prompt further proceedings.

Ms. Tummings has not carried her burden to show an injury that is actual and imminent such that she requires immediate relief before Defendants can be heard. The proper course is to give Defendants an opportunity to respond on an expedited basis so that the court may evaluate the allegations on a more complete record.

## II. The current record does not establish a clear or substantial likelihood of success on the merits.

At this stage, Ms. Tummings's evidence consists primarily of her own testimony that Defendants wrongfully denied her benefits, discriminated against her, and retaliated against her.

4

Those allegations may be sufficient to describe the nature of Ms. Tummings's claims, but they do not establish a "clear" or "substantial" likelihood that Ms. Tummings will prevail on her claims.

Ms. Tummings first asserts that Defendants violated LIHEAP and weatherization requirements by denying her heating assistance, weatherization services, and repair assistance over several years. (Doc. 1-2 at 1, 3.) In emails attached to Ms. Tummings's supplemental filing, ESD stated the Office of Economic Opportunity, which provides funding to CVOEO for weatherization services, had reviewed Ms. Tummings's weatherization application and determined on February 17, 2026 that CVOEO properly denied the application because Ms. Tummings did not live in the house for which she applied for services. (Doc. 8-1 at 2.) The emails further state that the Human Services Board had recently found that ESD properly denied Ms. Tummings's fuel-assistance application for the same reason. (*Id.*) Ms. Tummings disputes those findings and alleges that she resides at the house at issue. (Doc. 8 at 4; Doc. 8-1 at 2–3.) A factual dispute over residency by itself, however, does not establish a likelihood of success. Instead, it underscores the fact that the court cannot determine Ms. Tummings's likelihood of success without the benefit of responsive briefing from Defendants.

Ms. Tummings also alleges that Defendants denied her benefits "without proper legal basis, without adequate written notice, and without providing meaningful appeal rights." (Doc. 4 at 3.) The materials Ms. Tummings submitted, however, do not establish she was denied process. To the contrary, ESD's emails state that Ms. Tummings was provided an opportunity to appeal the weatherization denial to the Human Services Board and that the Board confirmed she had not submitted an appeal related to that denial. (Doc. 8-1 at 2.) Ms. Tummings responded she was not properly notified of her full appeal rights in a manner that allowed her to meaningfully respond.

(*Id.* at 3.) On this record, the assertion, unsupported by developed evidence, is insufficient to show a clear or substantial likelihood of success on a procedural due process claim.

Ms. Tummings's allegations of racial discrimination are similarly insufficient for a temporary restraining order. Ms. Tummings alleges she is a Black woman homeowner in Colchester, Vermont and that Defendants' repeated challenges to her ownership and residency are consistent with racially discriminatory skepticism. (Doc. 4 at 5.) Ms. Tummings has not identified any similarly situated applicant who was treated differently, any racially discriminatory statement by a decisionmaker, or any specific facts linking the challenged benefit determinations to racial animus. *See, e.g.*, *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). Instead, Ms. Tummings states that "[a]dditional evidence of discriminatory treatment will be developed through discovery." (Doc. 4 at 5.) That acknowledgment reinforces that the present record does not establish a likelihood of success on the discrimination claims.

Finally, Ms. Tummings has failed to show a clear or substantial likelihood of success on her state-law negligence and intentional-infliction claims. Ms. Tummings alleges that Defendants' denial of assistance left her with an unpaid debt to Vermont Gas, which resulted in a loss of their services, leading to burst pipes, water heater failure, and emotional distress. (*Id.* at 7.) Those claims raise issues of duty, breach, injury, and causation that are not resolved by the present filings. *See, e.g.*, *Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, ¶ 33, 219 Vt. 121, 315 A.3d 978. The filings do not include the governing program rules, the relevant applications and denial letters, the full administrative record, utility records, repair evidence, or documentation showing Defendants' challenged benefit determinations—rather than intervening events—were the proximate cause of the alleged injuries. Ms. Tummings's theory may be litigated on a more complete record, but it

6

does not establish a strong showing of a likelihood of success sufficient to justify a temporary restraining order.

**Conclusion**

The court cannot conclude on this limited record that Ms. Tummings has established a clear or substantial likelihood of success or that she is legally entitled to the *ex parte* temporary restraining order requested. Ms. Tummings's Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 5) is DENIED with respect to the request for a temporary restraining order. The court defers ruling on the Motion for a Preliminary Injunction. The court will direct Defendants to respond to Plaintiff's Motion for a Preliminary Injunction on an expedited basis after they have been served.

DATED at Rutland, in the District of Vermont, this 13th day of May 2026.

Mary Kay Lanthier
United States District Judge